UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN WEINBERG, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ALEXANDER MADISON REALTY, INC., a New York corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Jonathan Weinberg ("Plaintiff Weinberg" or "Weinberg") brings this Class Action Complaint and Demand for Jury Trial against Defendant Alexander Madison Realty, Inc., ("Defendant" or "AMR") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by directing its agents to place pre-recorded telemarketing calls to consumers without consent, including calls to phone numbers that are registered on the National Do Not Call Registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Weinberg, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.    Plaintiff Weinberg is a resident of Las Vegas, Nevada.

2.    Defendant AMR is a corporation registered in New York, with its headquarters located in Merrick, New York. Defendant AMR conducts business throughout this District and Nevada.

## JURISDICTION AND VENUE

3.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.    This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5.    As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.	When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.	By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.	The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.	According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in August 2023 alone, at a rate of 163.8 million per day. www.robocallindex.com (last visited September 3, 2023).

10.	The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.	"Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.	"The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.    Defendant AMR is a real estate company that operates throughout New York.[3]

14.    Defendant AMR trains its real estate agents to place telemarketing cold calls to consumers to generate business.

15.    AMR's CEO Jonathan Matute and his wife who is also an agent train each AMR real estate agent individually.[4]

16.    Upon information and belief, this training encompasses telemarketing to solicit real estate sales.

17.    Defendant AMR places pre-recorded solicitation calls to consumers to solicit real estate sales.

18.    In addition, some of the calls from AMR are being placed to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/alexander-madison-realty/
[4] https://www.facebook.com/alexandermadisonhomes/videos/196257183162453

19.     To make matters worse, AMR lacks a sufficient opt-out system to ensure that a consumer who notifies AMR or AMR's agents to stop calling them will be removed from their calling list, as per Plaintiff's experience.

20.     AMR is liable for the telemarketing calls and text messages conducted by its real estate agents because it provides training to all of the agents to do this type of outreach and because AMR provides leads to its real estate agents:



21.     Upon information and belief, Plaintiff Weinberg received unsolicited calls from Defendant AMR as a result of a lead AMR provided to its real estate agents.

22.     This belief is based upon the fact that at least 3 different AMR real estate agents placed unsolicited calls to Plaintiff's cell phone number.

23.     In response to these calls, Plaintiff Weinberg brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF WEINBERG'S ALLEGATIONS

24.     Plaintiff Weinberg registered his cell phone number on the DNC on January 14, 2005.

25.     Plaintiff Weinberg uses his cell phone number for personal use only as one would use a landline telephone number in a home.

26.     The calls that Plaintiff Weinberg received from Defendant AMR were all received more than 31 days after Plaintiff registered his cell phone number on the DNC.

27.     On March 6, 2023 at 6:44 AM, Plaintiff Weinberg received an unsolicited text message to his cell phone from an AMR real estate agent, from 631-420-6113:



28.     The aforementioned text message is apparently intended for Steven. Plaintiff Weinberg does not know who Steven is and does not identify himself using the name Steven.

29.     In addition, Plaintiff Weinberg has never used the email address sjames414@hotmail.com.

30.     On March 11, 2023 at 7:45 AM, Plaintiff Weinberg received a 2nd unsolicited text message to his cell phone from an AMR real estate agent, again from 631-420-6113:

> Hi Steven, this is John with Alexander Madison Realty. Do you like the properties I have been sending you? Is there anything I can change?

31.    On March 16, 2023 at 7:52 AM, Plaintiff Weinberg received a 3rd unsolicited text message to his cell phone from an AMR real estate agent, again from 631-420-6113:

Today 7:52 AM

Hi Steven, this is John from Alexander Madison Realty. I'm sorry we haven't been able to connect. I'm available via phone 631-295-0716 and email jdemaria@amrhomes.com. When is a good time for us to chat about what you are looking for?

32.    The    phone    number    631-295-0716    and    the    email jdemaria@amrhomes.com belong to John DeMaria, a real estate agent who works for AMR:



John DeMaria
Real Estate Salesperson
Office: 516-307-0800
Mobile: 631-295-0716

[6]

33.    DeMaria was employed by AMR during the time Plaintiff received text messages from him:

---

[6] https://johndemaria.mylongislandpropertysearch.com/



John DeMaria
--

Experience

Real Estate Salesperson
Alexander Madison Realty
Jun 2021 - Present · 2 yrs 4 mos

[7]

34.    On June 7, 2023 at 8:25 AM, Plaintiff Weinberg received an unsolicited text message from an AMR real estate agent, from 631-919-7969. In response, Plaintiff immediately texted "End" to 631-919-7969 and received confirmation that he was unsubscribed:



---

[7] https://www.linkedin.com/in/john-demaria-198639219/

35.     When 631-919-7969 is called and when the call goes to voicemail, it identifies the phone number 347-533-0093.[8]

36.     The phone number 347-533-0093 is owned and operated by Ioannis 'John' Nicolaou, an AMR real estate agent:



## Ioannis "John" Nicolaou

Real Estate Salesperson

Phone: 516-307-0800
Mobile: 347-533-0093
Fax: 516-342-5623
Email: jnicolaou@amrhomes.com
Speaks Greek

[Download]

<sup>9</sup>

37.     Despite his clear stop request, on June 24, 2023 at 8:12 AM, Plaintiff Weinberg received an unsolicited phone call to his cell phone from AMR real estate agent Ioannis John Nicolaou, from 347-533-0093.

38.     When Plaintiff answered this call, the employee said his name was John and that he was looking to speak to Steven James about buying or selling a property.

39.     Plaintiff Weinberg told John that he is not Steven James. John said that he would update his records and the call ended.

---

[8] Based on an investigation conducted by Plaintiff's attorneys
[9] https://www.alexandermadisonhomes.com/ioannis-john-nicolaou

40.     Despite his 2nd clear stop request, Plaintiff Weinberg received yet another unsolicited phone call from Defendant AMR to his cell phone on July 11, 2023 at 4:57 PM.

41.     This call was not answered, but a pre-recorded voicemail was left by a female real estate agent:



42.     This phone number 516-307-0800 is owned/operated by Defendant AMR itself:



43.     Plaintiff Weinberg believes this voicemail was pre-recorded due to its generic, scripted nature and due to the intonation of the message. The voicemail does not state who the message is intended for and the recording does not provide a name or any identifying information about the agent leaving the message.

44.     On August 1, 2023 at 7:48 AM, Plaintiff Weinberg received yet another text message from AMR real estate agent John DeMaria to his cell phone number, from phone number 631-430-6113. In response to this text message, Plaintiff immediately texted "End" to 631-430-6113 and received confirmation that his phone number was unsubscribed:

---

[10] https://www.alexandermadisonhomes.com/



45.     Plaintiff Weinberg has never done business with AMR and has never given them consent to call his phone number.

46.     The unauthorized solicitation telephone calls and text messages that Plaintiff Weinberg received from or on behalf of Defendant AMR have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

47.     Seeking redress for these injuries, Plaintiff Weinberg, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

48.     Plaintiff Weinberg brings this action pursuant to Federal Rules of

Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following

Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who
> from four years prior to the filing of this action through class certification
> (1) Defendant AMR called on their cellular telephone number (2) using
> an artificial or pre-recorded voice.
>
> **Do Not Call Registry Class:** All persons in the United States who from
> four years prior to the filing of this action through class certification (1)
> AMR called and/or texted more than one time, (2) within any 12-month
> period, (3) where the person's residential telephone number had been
> listed on the National Do Not Call Registry for at least thirty days, (4)
> for substantially the same reason Defendant called/texted Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from
> four years prior to the filing of this action through class certification (1)
> Defendant AMR called/texted more than one time on their residential
> telephone number, (2) within any 12-month period (3) for substantially
> the same reason Defendant called/texted Plaintiff, (4) including at least
> once after the Defendant's records reflect the person requested that they
> stop calling/texting.

49.     The following individuals are excluded from the Classes: (1) any Judge

or Magistrate presiding over this action and members of their families; (2)

Defendant, its subsidiaries, parents, successors, predecessors, and any entity in

which either Defendant or their parents have a controlling interest and their current

or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Classes; (5)

the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Weinberg anticipates the need to amend the Class definition following appropriate discovery.

50.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

51.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant AMR placed pre-recorded voice message calls to Plaintiff Weinberg and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c)     Whether Defendant placed multiple calls/text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call/text message;

(d)     whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(e)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

52.     **Adequate Representation**: Plaintiff Weinberg will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Weinberg has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Weinberg and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Weinberg nor his counsel have any interest adverse to the Classes.

53.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the

Classes as wholes, not on facts or law applicable only to Plaintiff Weinberg. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Weinberg and the Pre-recorded No Consent Class)**

54.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55.     Defendant AMR and/or its agents transmitted unwanted telephone calls to Plaintiff Weinberg and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

56.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Weinberg and the other members of the Pre-recorded No Consent Class.

57.     The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Weinberg and the other members of the

Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Weinberg and the Do Not Call Registry Class)**

58.   Plaintiff repeats and realleges paragraphs 1 through 53 of this Complaint and incorporates them by reference herein.

59.   The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

60.   Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

61.   Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Weinberg and the Do Not Call Registry Class members who registered their

respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

62.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Weinberg and the Do Not Call Registry Class received more than one telephone call/text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

63.     As a result of Defendant's conduct as alleged herein, Plaintiff Weinberg and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

64.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Weinberg and the Internal Do Not Call Class)**

65.     Plaintiff repeats and realleges paragraphs 1 through 53 of this Complaint and incorporates them by reference herein.

66.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900

number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

67.    Defendant placed calls/text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

68.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

69.    Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of

Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Weinberg requests a jury trial.

Respectfully Submitted,

**JONATHAN WEINBERG**, individually
and on behalf of all others similarly situated,

DATED this 17th day of October, 2023.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative
Classes*